UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE KIRKLAND GROUP, INC.                                                                PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:20-CV-496-DPJ-FKB

SENTINEL INSURANCE                                                                       DEFENDANT
COMPANY LTD., d/b/a THE
HARTFORD

ORDER

Plaintiff The Kirkland Group, Inc. (Kirkland), sued its insurer seeking a declaratory judgment that its property-insurance policy covers business losses associated with the COVID-19 pandemic. Defendant Sentinel Insurance Company Ltd., d/b/a The Hartford (Sentinel), now asks the Court to dismiss Kirkland's First Amended Complaint. Mot. [18]. Because coverage was expressly excluded, Sentinel's Motion to Dismiss [18] is granted.

I.      Facts and Procedural History

Kirkland "is an educational consulting firm" based in Ridgeland, Mississippi. Am. Compl. [16] ¶ 2. At all relevant times, it held a property-insurance policy issued by Sentinel insuring a building at 404 Orchard Park in Ridgeland, Mississippi. Policy [18-1] at 13. In addition to property-damage coverage, the Policy also provided business-interruption coverage.

Kirkland says that coverage was triggered by two executive orders from Mississippi Governor Tate Reeves. Am. Compl. [16] ¶ 3. First, on March 19, 2020, Governor Reeves entered Executive Order 1460, which closed all public schools. Thereafter, on March 24, 2020, Governor Reeves issued Executive Order 1463, this time instructing Mississippi residents to "avoid social and other non-essential gatherings in groups of more than 10 people . . . where individuals are in close proximity to each other." Executive Order 1463 [18-3] at 3. That Order

excepted from its 10-person limitation "any Essential Business or Operation providing essential services or functions." *Id.*

Kirkland says these orders "prohibited the public from accessing [its] business, thereby causing the necessary suspension of its operations." Am. Compl. [16] ¶ 36. As a result, it submitted a claim for business-interruption losses under the Policy. According to Kirkland, Sentinel "denied [Kirkland's] claims without conducting a proper investigation." *Id.* ¶ 38.

Aggrieved, Kirkland sued Sentinel on August 3, 2020, and filed its Amended Complaint on March 30, 2021. The Amended Complaint seeks a declaratory judgment regarding coverage and asserts claims for breach of contract and bad-faith denial of benefits. Sentinel moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

II.     Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).

Ordinarily, a Court decides a motion under Rule 12(b)(6) by looking only to the allegations of the Complaint. *See* Fed. R. Civ. P. 12(d) (limiting record on motion under Rule 12(b)(6) or 12(c) to matters contained in the pleadings). But some documents outside the pleadings may be considered under Rule 12(b)(6). For example, documents attached to a motion to dismiss that are "referred to in the plaintiff's complaint and . . . central to her claim," are considered part of the pleadings. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Here, Sentinel attached the Policy to its motion to dismiss. The Court can consider the Policy without converting this motion into one for summary judgment.

III.     Analysis

The parties agree that Mississippi law governs this dispute. *See* Def.'s Mem. [19] at 7; Pl.'s Mem. [20] at 6. Under Mississippi law, "the construction of the insurance policy . . . presents a question of law." *Century Sur. Co. v. S & R Dev., Inc.*, 483 F. Supp. 3d 400, 403 (S.D. Miss. 2020).

> Mississippi treats insurance policies as contracts, which "are to be enforced according to their provisions." *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004). . . . Courts give words "their plain, ordinary, and popular meaning, not a philosophical or scientific meaning." [*Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 253 (Miss. Ct. App. 2006).]
>
> "[P]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998). But "if a contract is clear and unambiguous, then it must be interpreted as written." *U.S. Fid. & Guar. Co.* [*of Miss. v. Martin*], 998 So. 2d 956[,] 963 [(Miss. 2008)].

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Sols., LLC*, 751 F.3d 684, 688 (5th Cir. 2014).

The Policy in this case provides coverage for "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations . . . caused by or resulting from a Covered Cause of Loss." Policy [18-1] at 29. It also provides limited coverage related to

3

viruses, business-income coverage, and civil-authority coverage. But Sentinel contends that the Policy's virus exclusion precludes coverage under these provisions; the provisions do not otherwise apply; and because there is no coverage under the Policy, Kirkland's bad-faith claim fails as a matter of law.

      A.      Virus Exclusion/Limited Virus Coverage

Kirkland first argues that it is entitled to coverage under the Policy's Limited Fungi, Bacteria or Virus Coverage endorsement. *See* Pl.'s Mem. [20] at 8. But that endorsement begins with an exclusion from coverage:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> [] Presence, growth, proliferation, spread or any . . . virus.

Policy [18-1] at 125.

As an initial point, Kirkland seeks damages for losses caused directly or indirectly by the novel Coronavirus. The virus exclusion therefore blocks Kirkland's claims unless the following exception to the virus exclusion applies:

> a. The coverage described in []b. below only applies when the . . . virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.
>
>     (1) A "specified cause of loss" other than fire or lightening;
>
>     (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises.
>
> b. We will pay for loss or damage by . . . virus. As used in this Limited Coverage, the term loss or damage means:
>
>     (1) Direct physical loss or direct physical damage to Covered Property caused by . . . virus, including the cost of removal of the . . . virus;

> (2) The cost to tear out and replace any part of the building or other property as needed to gain access to the . . . virus; and
>
> (3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that . . . [a] virus [is] present.

*Id.* at 126. Thus, the limited coverage applies only when the virus results from either a "specified cause of loss" or equipment breakdown. *Id.* The latter is not asserted, and Sentinel contends that the virus did not result from a "specified cause of loss." *Id.*

Kirkland first notes that the Policy fails to "define[] a 'specified cause of loss' in this additional limited viral coverage." Pl.'s Mem. [20] at 8. But as discussed next, the Policy defines the term, and absent a superseding definition in the endorsement, that definition applies. *See Travelers Ins. Co. v. Highlands Ins. Co.*, 546 F.2d 1147, 1149 (5th Cir. 1977) ("The endorsement does not contain any definition of automobile and therefore contains nothing to supersede the definitions included in the printed portions of the contract.").

As for that definition, the Policy states: "'Specified Cause of Loss' means the following: Fire; lightning; *explosion*, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; *falling objects*; weight of snow, ice or sleet; water damage." Policy [18-1] at 53 (emphasis added). Kirkland contends that under this definition, the virus resulted from a specified cause of loss because it followed an "explosion" or "falling objects." *Id.* Specifically, Kirkland says "a virus enters property or causes damage" through "an explosion, such as an 'explosive cough or sneeze' or falling objects, such as shedding virus from skin or through respiratory droplets." Pl.'s Mem. [20] at 8.

For starters, Kirkland failed to assert this theory in its Amended Complaint. Even if it had, "[c]ourts give words their plain, ordinary, and popular meaning, not a philosophical or

5

scientific meaning." *LogistiCare Sols., LLC*, 751 F.3d at 688.  While Kirkland offers a creative construction, it departs from the common meaning of an "explosion" or "falling object[ ]," especially in the property-loss context.  Policy [18-1] at 53.  All events listed in the specified-cause-of-loss definition—including explosions and falling objects—would cause direct physical loss or damage to property, which makes sense in a property-loss policy.  Kirkland's constructions of the terms "explosion" and "falling objects" are simply unreasonable, especially when the policy is "considered as a whole, with all relevant clauses together."  *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).[1]

Moreover, Kirkland asserts that "the virus that causes COVID-19 most commonly *spreads* from person to person by respiratory droplets during close physical contact."  Pl.'s Mem. [20] at 8 (emphasis added).  But Kirkland must show the "virus is the result of a specified cause of loss."  Policy [18-1] at 126.  While a sneeze may contain the virus, it does not cause it.  The novel Coronavirus is not the "result of a specified cause of loss."  *Id.*

For these reasons, the Court joins those courts from across the country that have found the virus exception applicable, even when coupled with a limited virus endorsement.  *See, e.g., Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, No. CV 20-2401, 2021 WL 131556, at *10 (E.D. Pa. Jan. 14, 2021) (holding that virus exclusion applied and that limited virus coverage was inapplicable).

Even so, Kirkland suggests that the limited virus coverage is illusory if it does not apply to events like this.  Pl.'s Mem. [20] at 8, 9; *see Krebs ex rel. Krebs v. Strange*, 419 So. 2d 178,

---

[1] For instance, the limited virus coverage exists "only if all reasonable means were used to save and preserve *the property from further damage* at the time of and after that occurrence."  Policy [18-1] at 126 (emphasis added).  The apparent intent is to provide coverage related to specified events that cause "damage" to the insured "property."  *Id.*  Sneezes, coughs, shed skin, and droplets would not cause "further damage" to the insured property.  *Id.*

182 (Miss. 1982) ("If what appears to be a promise is an illusion, there is no promise.") (citation omitted). But *Curtis O. Greiss & Sons, Inc. v. Farm Bureau Insurance Co. of Nebraska* illustrates that a virus can result from a covered cause of loss. 528 N.W.2d 329 (Neb. 1995). There, the Nebraska Supreme Court "determined that a tornado carried a pseudorabies virus to the plaintiff's swine 'insured by defendant insurance company for physical loss caused directly by an applicable peril,' where windstorms were covered perils under the policy." *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-4434-JSC, 2020 WL 7342687, at *4 (N.D. Cal. Dec. 14, 2020) (quoting *Curtis O. Greiss*, 528 N.W.2d at 331); *see also Ultimate Hearing Sols. II, LLC*, 2021 WL 131556, at *10 (holding that limited-virus-coverage endorsement is not illusory). The limited virus coverage is limited but not illusory, and it does not apply in this case.[2]

### B.   Business-Income Coverage

Kirkland also invokes the Policy's business-income coverage, which provides:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to

---

[2] Sentinel alternatively argues that even if Kirkland could show the virus resulted from a specified cause of loss, Kirkland has still failed to allege that it suffered "[d]irect physical loss . . . to Covered Property." Policy [18-1] at 126. That same argument would also defeat Kirkland's business-income-coverage claim. Because this is an alternative point, the Court will not belabor it. That said, Sentinel is correct, largely for the reasons stated in its briefs and by the numerous cases Sentinel cites. While the Governor's orders may have interfered with Kirkland's business and caused economic loss, the virus did not cause "direct physical loss . . . to Covered Property." *Id.* Kirkland lost income, not the Covered Property. And while Kirkland argues that "[l]oss of [m]oney is a [l]oss," Pl.'s Mem. [20] at 13, the Policy excludes "[m]oney" from the definition of Covered Property, so lost money is not loss to Covered Property. Policy [18-1] at 29; *see Hartford Ins. Co. of Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (holding that the term "physical loss" "exclude[s] alleged losses that are intangible or incorporeal, and, thereby, . . . preclude[s] any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property") (quoting 10A Couch On Ins. § 148:46 (3d ed. 2005)).

>property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

Policy [18-1] at 38. The "period of restoration" "[b]egins with the date of direct physical loss or physical damage caused by or resulting from a Covered Cause of Loss" and ends when the premises is "repaired, rebuilt or replaced" or when the "business is resumed at a new, permanent location." *Id.* at 52. "Covered Causes of Loss" means "RISKS OF DIRECT PHYSICAL LOSS unless the loss is" subject to exclusions or limitations. *Id.* at 30. But this coverage is found in the Special Property Coverage Form, which is subject to the virus exclusion. *Id.* at 126. Accordingly, the coverage is excluded. And even if not excluded, Kirkland has not shown "direct physical loss," a point further buttressed by how the Policy defines "period of restoration." *Id.* at 38.

    C.    Civil-Authority Coverage

The final question is whether Sentinel owed Kirkland coverage under the Policy's civil-authority coverage. That provision states:

>This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is *specifically prohibited* by order of a civil authority *as the direct result of a Covered Cause of Loss* to property in the immediate area of your "scheduled premises".

*Id.* at 39 (emphasis added).

Again, the virus exclusion precludes this coverage. But even if it survived that provision, the claim would still fall short because the "access to [Kirkland's] 'scheduled premises'" was never "*specifically* prohibited by order of a civil authority." *Id.* (emphasis added). As explained above, Executive Order 1463 directed "Mississippi residents [to] avoid social and other non-essential gatherings in groups of more than 10 people . . . where individuals are in close proximity to each other." Executive Order 1463 [18-3] at 3. It did not "specifically prohibit[]" Kirkland from "access[ing its] 'scheduled premises.'" Policy [18-1] at 39. And while Executive

8

Order 1460 did close public schools, the schools with which Kirkland works are not part of Kirkland's "scheduled premises." *Id.* Plus, even the school-closure order permitted school districts to "continue to operate with essential faculty and staff, whether working from home or in the workplace." Executive Order 1460 [18-2] at 3. The Policy does not provide coverage for Kirkland's business losses under the civil-authority provision.[3]

D.    Bad-Faith Claim

Finally, Sentinel argues that Kirkland's bad-faith claim fails because it has not established the existence of coverage. Where a plaintiff "cannot establish the existence of coverage for its claimed damages under the policy, it cannot recover on its claims of bad faith." *Burroughs Diesel, Inc. v. Travelers Indemnity Co. of Am.*, 817 F. App'x 2, 5 (5th Cir. 2020) (citing *Stubbs v. Miss. Farm Bureau Cas. Ins. Co.*, 825 So. 2d 8, 13 (Miss. 2002)). Kirkland did not respond to Sentinel's argument on this point. Its bad-faith claim is due to be dismissed.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Sentinel's Motion to Dismiss [18] is granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 29th day of June, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] That the civil-authority-coverage provision specifically covers income lost when "access to" insured property is prohibited further supports Sentinel's argument that "direct physical loss . . . to property" in the limited virus coverage requires actual damage or loss and not restricted access resulting in economic loss. Policy [18-1] at 39.